IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEOLA NATHAN KANAE, #A5010358, | CIVIL NO. 20-00562 HG-KJM |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| vs. | |
| KEVIN MOCK; SCOTT JINBO; JOHN DOE, | |
| Defendants. | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is Plaintiff Keola Nathan Kanae's ("Kanae") first amended

prisoner civil rights complaint ("FAC") brought pursuant to 42 U.S.C. § 1983.

ECF No. 6.  Kanae alleges that Defendants[1] violated his constitutional rights

during his incarceration at the Halawa Correctional Facility ("HCF").[2]

Specifically, Kanae claims that Defendants Mock and Jinbo violated the First

---

[1] Kanae names Kevin Mock and Scott Jinbo in their individual and official capacities.  ECF No. 6 at 2–3.  He also names "John Doe" in his official capacity.  *Id.* at 2.  Kanae describes John Doe as the Director of the Hawaii Department of Public Safety ("DPS").  *Id.*

[2] Kanae is currently incarcerated at the Saguaro Correctional Center ("SCC") in Eloy, Arizona. *See* VINE, https://www.vinelink.com/classic/#/home (select "Hawaii" from "Please Select Your State of Interest" drop-down menu, follow "Find an Offender," and enter Kanae in "Last Name" and Keola in "First Name").

Amendment by retaliating against him. *Id.* at 5–13. He further claims that John Doe violated the Fourteenth Amendment by transferring him to the Saguaro Correctional Center ("SCC") within a year of his possible parole date. *Id.* at 14–20.

For the following reasons, the Court concludes that Kanae states colorable First Amendment claims against Mock and Jinbo. These claims shall be served and require a response after service is perfected. Kanae fails to state a plausible Fourteenth Amendment claim against John Doe. This claim is DISMISSED without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## I. <u>STATUTORY SCREENING</u>

The Court must conduct a pre-Answer screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis. 28 U.S.C. §§ 1915(e)(2), 1915A(a). During this screening, the Court must dismiss any complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007) (noting that 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) "are directed at screening out meritless suits early

on"); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

The Court construes pro se litigants' pleadings liberally and affords them the benefit of any doubt. *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam). Liberal interpretation of a pro se civil rights complaint, however "may not supply essential elements of the claim that were not initially pled." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court cannot dismiss a pro se litigant's pleading without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Before dismissing a pro se complaint, the Court must provide the litigant with notice of the deficiencies in his complaint "to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks and citations omitted).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12"). *See Rosati*, 791 F.3d at 1039. Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Byrd*, 885 F.3d at 642.  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See Iqbal*, 556 U.S. at 678.  Although this plausibility standard does not equate to a "probability requirement," "it asks for more than sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (same).

Rule 12 is read in conjunction with Federal Rule of Civil Procedure Rule 8(a) ("Rule 8") when screening a complaint.  Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  (citation omitted) (brackets in original); *see also Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 112 (9th Cir. 2016) (same).

4

## II.  **BACKGROUND**[3]

On April 24, 2020, prison officials escorted Kanae from his general
population housing module to meet with Defendant Mock, the HCF's chief of
security, regarding an allegation that Kanae had asked a gang member to harm his
wife.  ECF No. 6 at 6–7.  Kanae denied the allegation and "calm[ly]" told Mock
that he had not made any calls that day.  *Id.* at 6.  Mock allegedly "became hostile
and verbally abusive."  *Id.*  Kanae threatened to sue Mock if he continued to
"harass" him.  *Id.*  Mock allegedly responded by saying, "I was just about to let
you go back to your module, but, since you want to talk about lawsuits—you just
won yourself a write-up Attorney Kanae."  *Id.*

Kanae claims that Mock proceeded to retaliate against him by:  (1) moving
him from his general population housing module to the HCF's "segregation unit";
(2) charging him with a misconduct violation that resulted in Kanae spending sixty
days in segregation; and (3) issuing a "cease and desist order" that prohibited
Kanae from contacting his wife.[4]  *Id.* at 6–7.  Kanae feared complaining about the

---

[3] At the screening stage, Kanae's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] Kanae claims that his wife complained to the HCF about the order.  ECF No. 6 at 8.  As a result, prison officials at the HCF did not enforce the order, and Kanae was able to communicate with his wife almost daily.  *Id.*  Kanae "assumed the order had been dissolved."  *Id.*

alleged retaliation because he thought that Mock "could do anything he wanted to—maybe even hurt [Kanae]." *Id.* at 8.

In July 2020, Kanae sent a letter to the Department of Public Safety ("DPS") stating that his wife was about to give birth. *Id.* at 16. In the letter, Kanae asked to remain at a Hawaii correctional facility. *Id.* On August 6, 2020, Defendant Jinbo informed Kanae that he was being transferred to the SCC.[5] *Id.* at 8. Jinbo allegedly told Kanae, "Chief Mock said he hopes you said by [to your wife], because when you get to Saguaro [w]e're going to make sure you don't get to talk to talk to her for a long time." *Id.* at 9. Jinbo allegedly told prison officials at the SCC that Kanae was prohibited from contacting his wife. *Id.* at 9–10.

On September 16, 2020, Kanae's wife sent an e-mail to Jinbo demanding that the cease and desist order be "dissolved." *Id.* at 10. Kanae's wife allegedly told Jinbo that she "had never needed, sought, nor desire[d] the order[.]" *Id.* Kanae claims that Jinbo took no action in response to his wife's e-mail. *Id.*

While at the SCC, Kanae wrote a letter to his wife and children. Relying on the cease and desist order, SCC prison officials charged Kanae with a misconduct violation on September 22, 2020. *Id.* Kanae's mother called the DPS to complain about the misconduct violation. *Id.* at 11. Her call was directed to Jinbo who

---

[5] Kanae does not allege that he was transferred to the SCC in retaliation for his statements to Mock.

allegedly said, "Maybe your son should stop threatening to sue everyone, over every little thing, and he wouldn't have these problems." *Id.* On October 1, 2020, Kanae's attorney sent an e-mail to Jinbo asking him to rescind the cease and desist order, and he did so. *Id.* According to Kanae, however, Jinbo refused to rescind the September 22, 2020 misconduct violation. *Id.*

Kanae filed his original Complaint on December 21, 2020. ECF No. 1. On February 3, 2021, the Court issued an Order Dismissing Complaint in Part with Partial Leave to Amend. ECF No. 5. Kanae filed the FAC on March 10, 2021. ECF No. 6. Kanae alleges in Count I that Mock and Jinbo violated the First Amendment by retaliating against him. *Id.* at 5–13. Kanae alleges in Count II that John Doe violated the Fourteenth Amendment by transferring him to the SCC less than a year before his possible parole date. *Id.* at 14–20. Kanae seeks compensatory damages totaling $103,500, punitive damages totaling $1 million, nominal damages totaling $1, fees and costs, and injunctive relief. *Id.* at 16–17.

## III. <u>DISCUSSION</u>

### A. Legal Framework for Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state

law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Belgau v. Inslee*, 975 F.3d 940,

946 (9th Cir. 2020).  Section 1983 requires a connection or link between a

defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper v. City of Los Angeles*, 533 F.3d

1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate

that the defendant's conduct was the actionable cause of the claimed injury."

(citation omitted)).  "'A person "subjects" another to the deprivation of a

constitutional right, within the meaning of section 1983, if he does an affirmative

act, participates in another's affirmative acts, or omits to perform an act which he

is legally required to do that causes the deprivation of which complaint is made.'"

*Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v.*

*Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

## B.    Eleventh Amendment

Kanae names Mock and Jinbo in their official and personal capacities, and

he names John Doe in his official capacity.  ECF No. 6 at 1-2.  Kanae seeks both

money damages and prospective injunctive relief.  *Id.* at 23–24.

"The Eleventh Amendment bars suits for money damages in federal court

against a state, its agencies, and state officials acting in their official capacities."

*Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations

omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03

8

(1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Any claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment and therefore DISMISSED with prejudice.  *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").  To the extent Kanae seeks prospective relief against Defendants in their official capacities based on ongoing violations of federal law, those claims are not barred by the Eleventh Amendment.  Likewise, the Eleventh Amendment does not bar Kanae's claims for money damages against Defendants in their personal capacities.

## C.   First Amendment

Kanae alleges in Count I that Mock and Jinbo violated the First Amendment by retaliating against him.  ECF No. 6 at 5–13.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Nordstrom*, 762 F.3d at 908. "The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts[.]" *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (footnotes omitted). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567–68 (footnotes omitted). Regarding the third element, "threats to sue fall within the purview of the constitutionally protected right to file grievances." *Entler*, 872 F.3d at 1039. Regarding the fourth element, a prisoner's "allegations

10

that his First Amendment rights were chilled, though not necessarily silenced, is enough to perfect his claim." *Rhodes*, 408 F.3d at 569.

### 1.    *Defendant Mock*

After Kanae threatened to sue Mock if he continued to "harass" him, Mock allegedly said, "I was just about to let you go back to your module, but, since you want to talk about lawsuits—you just won yourself a write-up Attorney Kanae." ECF No. at 6.  Mock allegedly retaliated against Kanae by:  (1) moving him from a general population housing module to the HCF's "segregation unit"; (2) charging him with a misconduct violation that resulted in Kanae spending sixty days in segregation; and (3) issuing a "cease and desist order" that prohibited Kanae from contacting his wife.  ECF No. 6 at 6–7.  Kanae claims that he feared complaining about the alleged retaliation because he thought that Mock "could do anything he wanted to—maybe even hurt [Kanae]." *Id.* at 8.  Based on these allegations, Kanae states a plausible retaliation claim against Mock that may proceed.

### 2.    *Defendant Jinbo*

Before Kanae was transferred to the SCC, Jinbo allegedly told him, "Chief Mock said he hopes you said bye to [your wife], because when you get to Saguaro, [w]e're going to make sure you don't get to talk to her for a long time." *Id.* at 9. According to Kanae, Jinbo retaliated against him by instructing prison officials at

the SCC to enforce the cease and desist order, even though he knew that that order was not enforced against Kanae at the HCF.  *Id.* at 8–9.  Jinbo also allegedly refused to "dissolve" the order even after Kanae's wife sent an e-mail to him stating that she "had never needed, sought, nor desire[d] the order."  *Id.* at 10.  According to Kanae, when his mother spoke with Jinbo on the phone, he said, "Maybe your son should stop threatening to sue everyone, over every little thing, and he wouldn't have these problems."  *Id.* at 11.  Even after Jinbo "dissolved" the cease and desist order, following an e-mail from Kanae's attorney, he refused to expunge a misconduct violation issued against prison officials at the SCC based on a letter Kanae mailed to his wife.  *Id.* at 11.  Based on these allegations, Kanae states a plausible a retaliation claim against Jinbo that may proceed.

**D.    Fourteenth Amendment**

Kanae alleges in Count II that John Doe violated the Fourteenth Amendment by transferring him to the SCC within a year of his possible parole.  *Id.* at 14–20.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies[.]"  *Id.*

12

(citations omitted); *see Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) ("A state may create a liberty interest through statutes, prison regulations, and policies.").  "'[L]awfully incarcerated persons retain only a narrow range of protected liberty interests.'"  *Id.* at 1062–63 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)) (brackets in original).

### 1.    *No Liberty Interest Under the Due Process Clause*

The Due Process Clause itself does not protect a prisoner against either intrastate or interstate transfers. *Meachum v. Fano*, 427 U.S. 270, 225 (1976) (concluding that the Due Process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has not justifiable expectation that he will be incarcerated in any particular State.").  Kanae, therefore, cannot state a claim under the Due Process Clause itself based on his transfer to the SCC.  *See St. Clair v. Matsuoka*, Civ. No. 17-00573 JMS-RLP, 2017 WL 8793428, at *3 (D. Haw. Dec. 14, 2017) ("DPS had no obligation under the Due Process Clause itself to return [plaintiff] to a prison in Hawaii one year before his parole or release date.").

### 2.    *No State-created Liberty Interest*

Kanae contends that Haw. Rev. Stat. § 353H-7 created a liberty interest.

Section 353H-7 states that the "director of public safety shall return Hawaii

inmates held in out-of-state prisons at least one year prior to the inmate's parole or

release date." Haw. Rev. Stat. § 353H-7(a). The explicit purpose of the statute is

to allow inmates "to participate in programs preparing them for reentry[.]" *Id.*

Inmates participating in reentry programs at a prison in the contiguous United

States must consent to return pursuant to the statute. *Id.* At the end of each

calendar year, the DPS must provide a report to the legislature providing the

reasoning and circumstances for a prisoner who was not returned pursuant to Haw.

Rev. Stat. § 353H-7.

In determining whether a state-created liberty interest exists, the inquiry

focuses on whether the action "imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515

U.S. 472, 484 (1995); *Chappell*, 706 F.3d at 1064. The "baseline for determining

'atypical and significant hardship' is not entirely clear." *Brown v. Or. Dep't of

Corr.*, 751 F.3d 983, 988 (9th Cir. 2014). The Ninth Circuit has said that, "[r]ather

than invoking a single standard for determining whether a prison hardship is

atypical and significant, [courts] rely on a condition or combination of conditions

or factors [that] requires case by case, fact by fact consideration." *Serrano v.*

14

*Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (internal quotation marks and citation omitted) (second alteration in original).  Courts can consider whether the conditions of confinement violate Eighth Amendment standards, the duration of the hardship, and whether the sanction will invariably affect the duration of the prisoner's sentence.  *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).  If the hardship is "sufficiently significant," then the court determines whether the procedures used to deprive that liberty interest satisfied due process.  *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).

Kanae has not plausibly alleged that his transfer to the SCC imposed an "atypical and significant hardship" on him.  Kanae claims that, at the SCC:  (1) valley fever[6] prevents him from exercising; (2) he is allowed three showers per week; (3) he cannot see his family in person; (4) he is allowed one telephone call per month; and (5) he is in administrative segregation.  ECF No. 6 at 17–19.  First, whether taken separately or collectively, these conditions do not rise to the level of the "extreme deprivation[] . . . required to make out a conditions-of-confinement claim" under the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).  Second, Kanae does not allege that he will experience these conditions for a lengthy time period.  Third, Kanae does he allege that these conditions will

---

[6] Valley fever is an infection caused by fungus known to live in the soil in the southwestern United States.  *See* Centers for Disease Control, Valley Fever, https://www.cdc.gov/fungal/diseases/coccidioidomycosis/index.html (last visited Mar. 19, 2021).

invariably affect the duration of his sentence.  While Kanae claims that the limited
number of phone calls at the SCC "will *more than likely* lead to the denial of [his]
parole," ECF No. 6 at 18 (emphasis added), this is not enough.  *See Sandin*, 515
U.S. at 487 (concluding that state's action did not "invariably affect the duration of
[the prisoner's] sentence" and was therefore "too attenuated to invoke the
procedural guarantees of the Due Process Clause").  Finally, although the stated
purpose of the statute is to allow prisoners to participate in reentry programs,
Kanae does not allege that such programs are unavailable to him at the SCC.
Kanae has not plausibly alleged an "atypical and significant hardship."  *See St.
Clair*, 2017 WL 8793428, at 3 ("[Plaintiff]  fails to set forth facts showing that he
was subjected to atypical and significant hardship by his continued incarceration in
Arizona in relation to conditions he may have experienced had he been returned to
Hawaii.").

Kanae asserts that Haw. Rev. Stat. § 353H-7 establishes "substantive
predicates" to govern official decision-making and uses "explicitly mandatory"
language.  ECF No. 6 at 15.  As the Ninth Circuit has recognized, however, *Sandin*
abandoned this methodology.  *See Chappell*, 706. F.3d at 1064 ("[W]e have
concluded that the discretionary/mandatory substantive predicates approach was
'abandoned' or 'overruled' in *Sandin*[.]").  Kanae has not plausibly alleged that the
conditions at the SCC amount to an "atypical and significant hardship" in relation

16

to the ordinary incidents of prison life. Kanae's due process claim is DISMISSED without prejudice.[7]

## IV.  CONCLUSION

(1)  Kanae's claims for money damages against Defendants in their official capacities are DISMISSED with prejudice.

(2)  Kanae's retaliation claims against Mock and Jinbo in Count I state plausible claims for relief, shall be served, and require a response.

(3)  Kanae's due process claim against John Doe is DISMISSED without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

## V.  SERVICE ORDER

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the First Amended Complaint, ECF No. 6, and one separate completed summons each for Defendants Mock and Jinbo. The U.S. Marshal shall open a file and retain these documents for use in the event that any Defendant declines to waive service of the summons.

---

[7] This dismissal does not prevent Kanae from moving to amend this claim if he is able to allege sufficient facts to show a due process violation as explained above. *See* Fed. R. Civ. P. 15.

17

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.:  (a) a copy of the First Amended Complaint, ECF No. 6, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form separately addressed to Defendants Mock and Jinbo; and (b) two completed Waiver of Service of Summons forms each for Mock and Jinbo.

(3)  Defendants Mock and Jinbo shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Defendants Mock and Jinbo fail to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Defendants Mock and Jinbo.  A personally served Defendant will be required to pay the costs of service.

 (4)  Defendants Mock and Jinbo shall file a response to the First Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5)  Kanae shall notify the court within one week of any change of address. This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may

18

result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendants Mock and Jinbo have filed a response to the First Amended Complaint, Kanae's documents are deemed served on any Defendant or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 6, 2021.

Helen Gillmor
Senior United States District Judge